UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS C.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-1233 MJP

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his applications for Disability Insurance Benefits and Supplemental Security Income. Plaintiff contends the ALJ erred by rejecting his testimony and several medical opinions. Dkt. 12. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 36 years old, has at least a high school education, and has worked as an end user support specialist, assisting desktop computer users. Dkt. 8, Admin. Record (AR) 33-34, 53, 102. Plaintiff alleges disability as of November 5, 2013. AR 19. He had neck surgery on May 14, 2015. AR 724. After the ALJ conducted hearings in September 2015 and April 2016, the ALJ issued a decision finding Plaintiff not disabled. AR 46, 68, 19-36.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process outlined in 20 C.F.R. §§ 404.1520, 416.920, the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the November 2013 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and status post cervical fusion at C5-6.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity:**
Through May 13, 2016 (one year after neck surgery): Plaintiff could perform sedentary work. He could occasionally kneel, crouch, stoop, and climb ramps and stairs. He could not crawl; climb ladders, ropes or scaffolds; or be exposed to unprotected heights, moving machinery, vibration, and concentrated extreme cold. He could not reach overhead with either upper extremity.

Since May 14, 2016: Plaintiff can perform light work. He can stand for three hours, walk for two hours, and sit for six hours per day. He can occasionally kneel, crouch, stoop, and climb ramps and stairs. He cannot crawl; climb ladders, ropes or scaffolds; or be exposed to unprotected heights, moving machinery, vibration, and concentrated extreme cold. He cannot reach overhead with either upper extremity.

**Step four:** Plaintiff can, and could prior to May 14, 2016, perform past relevant work as a user support specialist.

**Step five:** In the alternative, there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed through May 13, 2016, and that Plaintiff has been able to perform since May 14, 2016. Therefore, he is not disabled.

AR 21-36. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 3. The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

# DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if

the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.  Medical Opinions**

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). Under the regulations applicable when Plaintiff filed his applications, a nurse practitioner was a non-acceptable medical source. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

**1.     Steven Foster, D.O.**

In May 2014, Plaintiff's treating physician, Dr. Foster, diagnosed Plaintiff with lumbago and cervicalgia, and opined that these conditions significantly interfered with Plaintiff's abilities to walk, lift, carry, handle, push, pull, reach, stoop, and crouch. AR 635. Dr. Foster opined that Plaintiff was limited to sedentary work. AR 636. The ALJ gave "some weight" to this opinion, incorporating corresponding limitations into the RFC. AR 29, 24. Plaintiff describes Dr. Foster's May 2014 opinion but does not appear to challenge the ALJ's treatment of it. *See* Dkt. 12 at 3.

In July 2014, Dr. Foster opined that Plaintiff could sit four hours per day, stand/walk two hours per day, and lift 10 pounds frequently. AR 693. He could sit or stand 30 minutes before changing position, and would need to walk around for 10 minutes every hour. *Id*. He needed the opportunity to sit, stand, or walk at will. *Id*. He could never twist, stoop, crouch, or climb stairs or ladders, and his reach and manipulation were limited. AR 694. He would need to lie down at

unpredictable intervals approximately every one to two hours, and would miss about four days of work per month due to his impairments and treatment. *Id*.

The ALJ gave Dr. Foster's July 2014 opinions "limited weight," accepting the limitations to lifting 10 pounds and walking two hours per day but rejecting the remaining limitations as inconsistent with the overall medical record. AR 30.

### a) Medical Record

Plaintiff argues that "the fact that some other examinations in the record included different findings is not a legitimate reason to reject Dr. Foster's opinion, which was based on his independent clinical findings." Dkt. 12 at 5. However, inconsistency with the overall medical record can be a sufficient reason to reject a medical opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).

Asked to list the medical findings that supported the opined limitations, Dr. Foster wrote "MRI reveals lumbar stenosis [and] cervical foraminal stenosis. [Patient with] chronic pain, weakness in the extremities and limited range of motion." AR 694.

### (1) Range of Motion

While Plaintiff displayed limited range of motion in appointments with Dr. Foster, other providers generally found normal range of motion. In a thorough full-body range of motion evaluation in May 2014, Dr. Foster reported mostly normal results but found limited back extension, neck extension and flexion, neck right rotation, and hip flexion. AR 637-38. In October 2014 and January 2015, Dr. Foster observed that neck range of motion was limited due

to pain. AR 843, 849.

However, in December 2013, another provider ("Shaw") observed that Plaintiff had normal neck, back, and upper and lower extremity range of motion. AR 680. In February 2014, Plaintiff had normal back flexion, extension, and rotation. AR 632. In November 2014, Christopher W. Benner, A.R.N.P., found "full range of motion" in the neck "without hesitation." AR 696. Plaintiff had "excellent range of motion" in December 2014. AR 699. Daniel M. Kwon, M.D., found neck range of motion was "intact" in February 2015. AR 713. In April 2015, Michael S. Mullin, D.O., found that Plaintiff had normal neck and upper extremity range of motion. AR 720.

On this mixed record, the ALJ reasonably inferred that Plaintiff generally had a normal range of motion, contradicting the findings underlying Dr. Foster's opinions. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). While other interpretations may be possible, this Court will not disturb the ALJ's rational interpretation. *See Burch*, 400 F.3d at 680-81.

### (2) **Extremity Strength**

Dr. Foster reported Plaintiff had "[d]ecreased grip strength" of "4+/5" in July 2014. AR 838. Other providers, however, found normal strength. In October 2013, muscle strength was 5/5 symmetrically. AR 620. In April 2014 Plaintiff had normal strength in upper and lower extremities. AR 651. A May 2014 examination found "[n]o motor weakness." AR 643. Muscle strength was 5 out of 5 in December 2014 and April 2015. AR 700, 720. Extremity motor strength was "intact" in February 2015. AR 713.

On this record, the ALJ reasonably interpreted the evidence as showing that Plaintiff generally had normal strength, contradicting another of the findings underlying Dr. Foster's

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 6

opinions.

Inconsistency with the overall medical record, regarding both strength and range of motion, was a specific and legitimate reason to discount Dr. Foster's opinions, and thus the ALJ did not err by discounting them.

### (3) Stenosis/Narrowing

Dr. Foster's opinions were based on MRI reports of lumbar and cervical stenosis, however, as the ALJ noted, an October 2013 lumbar MRI showed "[n]o stenosis." AR 613. A June 2014 lumbar MRI showed "mild narrowing of the central canal." AR 691. A June 2014 cervical MRI showed "mild" foraminal narrowing on the right at C3-4 and "minimal" foraminal narrowing on the left at C6-7. AR 692. That Dr. Foster did not include the modifiers "mild" or "minimal" suggests that the findings on which his opinions depended were at least subtly overstated. While this would not be a sufficient reason standing alone to discount Dr. Foster's opinions, when taken together with the evidence about range of motion and extremity strength, overstating the MRI results tends to weaken the reliability of Dr. Foster's opinions.

Inconsistency with the medical record was a specific and legitimate reason to discount Dr. Foster's opinions.

### b) Drug Seeking Behavior

The ALJ found that "the claimant has engaged in drug seeking behavior, which renders his pain complaints less persuasive. Dr. Foster subsequently refused to continue prescribing pain medication, and the claimant fired him." AR 30.

Drug-seeking behavior can be a specific and legitimate reason to reject a treating doctor's opinion. *See Edlund v. Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (ALJ permissibly rejected treating physician's opinion because he was likely unaware claimant "was exaggerating

his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction"). Plaintiff does not challenge this reason for discounting Dr. Foster's opinions, and substantial evidence supports the ALJ's finding that Plaintiff engaged in drug-seeking behavior. In April 2015 (well after the July 2014 opinions at issue here), Dr. Foster reported that Plaintiff requested "new, stronger pain medications" and, when Dr. Foster refused, Plaintiff became upset, insulted and threatened Dr. Foster, and left saying he did not want to see Dr. Foster again. AR 777. On multiple other occasions, Plaintiff became upset when providers refused to prescribe more pain medications. *See* AR 760, 764.

Plaintiff's drug-seeking behavior was another specific and legitimate reason to discount Dr. Foster's opinions. The Court concludes the ALJ did not err by discounting Dr. Foster's opinions.

### c) **Additional Diagnoses**

Plaintiff argues cursorily that "Dr. Foster's treatment notes support diagnoses of depression, chronic pain, and insomnia." Dkt. 12 at 5; Dkt. 14 at 2. Regardless of what diagnoses Dr. Foster's notes could support, Plaintiff has not identified any evidence of any related limitations whatsoever. An ALJ need only include in the RFC limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ did not err by failing to include in the RFC any limitations related to depression, chronic pain, or insomnia.

### 2. **Leslie P. Schneider, Ph.D.**

In January 2015, Dr. Schneider examined Plaintiff and diagnosed him with pain disorder associated with psychological and physical factors, insomnia, and rule-out Asperger's syndrome. AR 705. Dr. Schneider did not opine any specific restrictions, but he mused that his "long

history of working with disability and Social Security [led him] to think [Plaintiff] may very well qualify for Disability." AR 706. The ALJ assigned "no weight" to this opinion because Dr. Schneider only saw Plaintiff once, a finding of disability is reserved to the Commissioner, the opinion contained a qualifier ("may"), and Dr. Schneider himself "noted that there were many factors which he stated he did not have a really good grasp on." AR 30.

Plaintiff is correct that a single examination is not a legitimate reason to discount a medical opinion. An ALJ must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), 416.927(b). And, although an ALJ is not bound by a doctor's opinion on the ultimate issue of disability, he cannot reject it without presenting legally sufficient reasons. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see* SSR 96-5p ("the regulations provide that the final responsibility for deciding issues such as [whether an individual is 'disabled'] is reserved to the Commissioner. Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").

However, the conditional nature of Dr. Schneider's statements was a specific and legitimate reason to discount his tentative opinion of disability. Dr. Schneider frames his report as an initial impression subject to further development, not an opinion establishing Plaintiff's abilities or limitations. The report is replete with uncertainty. He stated that Plaintiff's case had "a lot of factors here [that he] do[es] not think [he has] a really good grasp on." AR 705. He "do[es] not really have a very clear picture of what is going on." AR 706; *see also* AR 704 ("I would wonder if there might be a medication overuse syndrome here"), 705 ("I do strongly suspect" Asperger's syndrome). That Plaintiff "may very well" qualify for disability benefits shows an absence of certainty. Accordingly, the ALJ did not err by rejecting Dr. Schneider's

report to the extent it can be considered an opinion of disability.

Plaintiff argues that Dr. Schneider's report establishes diagnoses of pain disorder, insomnia, and rule-out Asperger's. Dkt. 12 at 6. Plaintiff fails to identify any evidence of any related limitations whatsoever, and thus the ALJ did not err by failing to include in the RFC any limitations related to these diagnoses.

### 3. Nancy Schwarzkopf, A.R.N.P.

On May 20, 2015, Ms. Schwarzkopf filled out a Physical Functional Evaluation form, opining that Plaintiff was unable to perform even sedentary work and would remain so for 12 months. AR 744. The ALJ gave "no weight" to this opinion because Ms. Schwarzkopf was not an acceptable medical source, she gave her opinion only five days after Plaintiff's neck surgery, she did not cite any objective findings in support of her opinion, and the 12-month duration was inconsistent with the longitudinal record. AR 30. An ALJ must consider all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

An ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. However, as Plaintiff notes, Ms. Schwarzkopf did append range of motion results to her opinion. AR 745-46. Plaintiff was "unable to perform" back, neck, and hip range of motion tests because he was "5 days post-op cervical fusion." AR 745. While these clinical findings supported Ms. Schwarzkopf's opinions at the time she gave them, substantial evidence supports the ALJ's finding that the longitudinal record contradicted the 12-month duration. Less than three weeks later, Plaintiff was "able to fully rotate neck without any evidence of pain." AR 764; *see also* AR 763 ("normal range of motion" in neck and upper and lower extremities).

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

Contradiction with the longitudinal record was a germane reason to discount Ms. Schwarzkopf's opinions, and thus the ALJ did not err by rejecting them. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is" a germane reason to discount testimony).

### 4. Joanna Kass, A.R.N.P.

In September 2015 and March 2016, Ms. Kass opined that Plaintiff would miss more than four days per month of work and was unable to meet competitive standards in many work-related mental abilities. AR 833-34, 913-14. The September 2015 opinions were based on Plaintiff's chronic pain and resulting "anxiety, inattention, and depression." AR 834. The March 2016 opinions were premised on "diagnoses of ADHD and Major Depressive Disorder." AR 913. The ALJ gave Ms. Kass' opinions "no weight" because the 2015 opinions lacked supporting objective evidence and drug-seeking behavior undermined Plaintiff's pain allegations, and because the 2016 opinions were predicated on diagnoses that had not been made by an acceptable medical source. AR 31.

Regarding the 2016 opinions, Plaintiff argues that Dr. Schneider and Dr. Kwon had diagnosed pain disorder. Dkt. 12 at 11 (citing AR 705, 713). However, mental diagnoses are not interchangeable. Plaintiff has not identified any objective medical evidence from an acceptable medical source diagnosing Plaintiff with ADHD or major depressive disorder and thus, under Social Security regulations, they were not medically determinable impairments. *See* 20 C.F.R. §§ 404.1521, 416.921. The absence of an established diagnosis underlying Ms. Kass' 2016 opinions was a germane reason to discount them. Accordingly, the ALJ did not err by discounting the 2016 opinions.

Regarding the 2015 opinions premised on chronic pain and resulting symptoms, the ALJ

found that drug-seeking behavior suggested that Plaintiff's pain complaints were motivated in part by a desire for drugs. AR 31, 28-29. As discussed above with regard to Dr. Foster's opinions, Plaintiff's repeated drug-seeking behavior undermined his pain complaints and was a germane reason to discount Ms. Kass' opinions premised on chronic pain. Even if lack of objective evidence was an erroneous reason to discount the opinions, it was harmless error because the ALJ provided the germane reason of drug-seeking behavior. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'").

The Court concludes the ALJ did not err by discounting Ms. Kass' 2015 and 2016 opinions.

**5.     Charles M. Linsenmeyer, M.D.**

In October 2015, Dr. Linsenmeyer reviewed Plaintiff's medical records and opined that, beginning November 5, 2013, Plaintiff was restricted to less than sedentary work and his impairments met listing 1.04A. AR 890-901. The ALJ gave these opinions "no weight" as unsupported by the objective evidence. AR 32.

Listing 1.04A requires compromise of a nerve root or the spinal cord with evidence of nerve root compression. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ noted that testifying medical expert Allan N. Levine, M.D., identified "various imaging studies and physical examinations showing no evidence of nerve root or spinal cord compromise." AR 32. A July 2014 cervical MRI study showed an "[u]nremarkable" spinal cord, which Dr. Levine testified indicates the absence of any spinal cord compromise. AR 692, AR 87. A 2014 lumbar MRI

made no mention of spinal cord or nerve root compromise. AR 89 (citing AR 691). A nerve conduction study of the upper extremities was also completely normal. AR 89 (citing AR 722). Physical examinations showing normal strength, sensation, reflexes, fine and gross manipulation, and gait also indicated the absence of spinal cord or nerve root compromise. AR 89-90 (citing AR 593, 643, 696-97, 699-700, 713). Substantial evidence supports the ALJ's finding that the medical evidence contradicted Dr. Linsenmeyer's opinion that Plaintiff's impairments equaled listing 1.04A. Plaintiff argues that his "spinal stenosis and associated symptoms were so severe that he required spinal surgery." Dkt. 14 at 5. But having surgery does not mean the Plaintiff's impairments met a listing; the listing requires showing compromise of a nerve root or the spinal cord with evidence of nerve root compression. The ALJ did not err by discounting Dr. Linsenmeyer's opinion that listing 1.04A was met.

Dr. Linsenmeyer based his opinions on the 2015 surgery for C5-C6 retrolisthesis with stenosis, a 2014 MRI showing L5-S1 central canal narrowing, and physical examinations showing muscle spasm and rigidity, decreased cervical range of motion, decreased right shoulder strength, and decreased right hand function. AR 899 (citing AR 724, 691, 843, 849, 872). The ALJ reasonably concluded that the record undermined several findings on which Dr. Linsenmeyer's opinions relied.

Despite a preoperative diagnosis of "C5-C6 retrolisthesis with stenosis causing radiculopathy," Dr. Levine testified that "the actual imaging studies pre-operatively did not indicate any retrolisthesis or any significant spinal stenosis." AR 724, 87 (citing AR 652). The imaging study he cited reported "[n]ormal radiographic appearance of the cervical spine." AR 652. And, while Dr. Linsenmeyer cited "L5/S1 narrowing of central canal," the MRI study he cited reported only "mild" narrowing. AR 899, 691. This was substantial evidence supporting

the ALJ's finding that the retrolisthesis and stenosis on which Dr. Linsenmeyer's opinions are based is, at minimum, overstated. Conflict with medical evidence was a specific and legitimate reason to discount Dr. Linsenmeyer's opinions. *See Batson*, 359 F.3d at 1195.

The Court concludes the ALJ did not err by discounting Dr. Linsenmeyer's opinions.

### 6. Dr. Levine

The end of Plaintiff's argument about Dr. Linsenmeyer concludes with this sentence: "And the ALJ also improperly rejected Dr. Levine's testimony that [Plaintiff] could not even do sedentary work 'from 5/14/2015 until 5/14/2016.'" Dkt. 12 at 12 (quoting AR 92); *see also* Dkt. 14 at 5. This is not an argument and the Court will not address it further. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no intelligible explanation in support of claim of error waives issue); *see also Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("we will not consider any claims that were not actually argued in appellant's opening brief").

### 7. Caryn Jackson, M.D.

In March 2016, Plaintiff's treating physician, Dr. Jackson, opined that Plaintiff could lift 25 pounds frequently, stand/walk four hours and sit four hours per day, and would need to shift at will between sitting and standing/walking. AR 906. Reaching and pushing/pulling would exacerbate his neck pain, and impairments and treatment would cause him to miss more than four days of work per month. AR 907. The ALJ gave these opinions "little weight" because the only finding Dr. Jackson cited in support was decreased neck range of motion, "especially lateral rotation." AR 32, 907. Plaintiff argues that, in addition to decreased neck range of motion, Dr. Jackson also found that Plaintiff's right hand was weak and painful, with "flexion/extension at 3+/5." Dkt. 12 at 13 (citing AR 950). However, when Dr. Jackson was asked what medical

findings supported her opined limitations, she cited only neck range of motion. In a September 2015 examination, Plaintiff's neck range of motion was only mildly reduced and, in particular, passive lateral rotation was unrestricted. AR 866. The ALJ reasonably concluded that such mild findings could not support such extreme restrictions as missing more than four days of work per month.

Plaintiff does not challenge the ALJ's other reasons, such as internal inconsistency and conflict with another medical opinion that was better supported by the record. *See* AR 32.

The Court concludes the ALJ did not err by discounting Dr. Jackson's opinions.

### 8. Other Medical Evidence

Plaintiff allots most of his brief to descriptions of medical record excerpts, without any analysis. *See* Dkt. 12 at 13-16, 3-6, 9-10. This is of no use to the Court, because it is not the Court's role to reevaluate the evidence. *See Thomas*, 278 F.3d at 957 (affirming where the "ALJ's interpretation of the conflicting medical evidence is supported by substantial evidence"). "It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Plaintiff's recitation of medical evidence sheds no light on whether the ALJ's decision is supported by substantial evidence and free of legal error, and the Court will not address it further.

## B. Plaintiff's Testimony

Plaintiff testified that he cannot sit for more than "a short while" without getting sharp pain in his neck. AR 57. He has intense pain after even minimal activity, such as getting in and out of a car a few times and then sitting at a picnic. AR 57-58. Extreme pain makes him vomit. AR 62. Plaintiff reported that the pain impairs his focus and concentration, and makes him

1 irritable and antisocial. AR 377, 382.

2 If an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

The ALJ discounted Plaintiff's testimony based on drug-seeking behavior and a lack of supporting medical evidence. AR 28. An ALJ may reject a claimant's testimony when there is evidence of drug-seeking behavior suggesting that the claimant exaggerated her symptoms to receive prescription pain medication. *See Edlund*, 253 F.3d at 1157. And, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681.

The ALJ rationally interpreted the evidence to find drug-seeking behavior. On multiple occasions, with multiple providers, Plaintiff became upset when providers refused to prescribe more pain medications. *See* AR 777, 760, 764. Plaintiff argues that his drug-seeking behavior shows how severe his pain is. Dkt. 12 at 17. While that is one interpretation, the ALJ's interpretation that he exaggerated pain complaints to obtain pain medication was rational. Plaintiff's providers were concerned about his drug-seeking behavior. In one emergency department visit, Plaintiff complained of neck pain but, when looking around for a personal item, he was "able to fully rotate neck without any evidence of pain." AR 764. In another emergency department visit, a provider could not prescribe narcotics because of the large number of pain pills/muscle relaxers Plaintiff had obtained from multiple providers and told Plaintiff that "a single provider needs to manage [his] medication." AR 760-61.

Drug-seeking behavior was a clear and convincing reason to discount Plaintiff's testimony. Plaintiff does not challenge the ALJ's additional reason of a lack of supporting objective evidence. *See* Dkt. 12 at 17-18. Because the ALJ provided clear and convincing reasons to discount Plaintiff's testimony, the Court need not reach the Commissioner's contention that the ALJ also cited affirmative evidence of malingering. *See* Dkt. 13 at 6. The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 20th day of June, 2019.

Marsha J. Pechman
United States District Judge